UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| CSAA GENERAL INSURANCE COMPANY, | ) ) ) | No. 5:20-CV-158-REW-MAS |
| Plaintiff, | ) ) | |
| v. | ) ) | OPINION & ORDER |
| TYLER BAILEY, et al., | ) ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Tyler Bailey (Bailey) moves to dismiss Plaintiff CSAA General Insurance Company's (CSAA) Amended Complaint (Complaint), arguing that Plaintiff's amendment to its original complaint was inappropriate, the Court lacks subject matter jurisdiction, the Complaint fails to state a claim on which relief can be granted, and the Court should decline to exercise jurisdiction over this declaratory judgment action under the *Grand Trunk* factors. DE 13. This matter is fully briefed. DE 22, 23, & 31-1. For the reasons discussed below, this case is properly in federal court, and the Court denies Bailey's Motion to Dismiss.

## I.   Background[1]

CSAA issued an occurrence-based homeowners insurance policy (Policy) to Tyler Bailey, insuring his residence at 129 W. Showalter Drive in Georgetown, Kentucky (Showalter Residence). DE 10 (Compl. ¶ 12); DE 10-1 (Policy). Bailey purchased the residence on May 30, 2017, and the Policy became effective on June 5, 2017. *Id.* (Compl. ¶ 13). The relevant effective

---

[1] The Court, as it must in the Rule 12 context, largely takes these allegations from the Complaint.

dates of the Policy in this action are June 5, 2018 to June 5, 2019. *Id.* (Compl. ¶ 13). Don Bailey, Tyler's father, has lived with Tyler at the Showalter Residence since the Policy was issued. *Id.* (Compl. ¶ 14). Justin Bailey, Tyler's brother, lived at the Showalter Residence from the date Tyler purchased the residence until sometime in 2018. *Id.* (Compl. ¶ 15). Tyler Bailey, Don Bailey, and Justin Bailey are each defined as an "insured" under the Policy. *Id.* (Compl. ¶¶ 12, 14, & 15). In 2016, Justin Bailey obtained a dog named Roscoe, and veterinarian records list Roscoe's breed as "Rottweiler." *Id.* (Compl. ¶ 16). CSAA asserts that Roscoe has been (jointly) owned by Tyler Bailey since Justin moved into the Showalter Residence. *Id.* (Compl. ¶ 17–18).

On February 10, 2020, Mark Woodland (Woodland) filed suit against Tyler Bailey and Don Bailey in Scott County Circuit Court. *Id.* (Compl. ¶ 29). Woodland alleges that on March 13, 2019, he was walking his own dog. The Baileys' dog (presumably Roscoe) attacked his dog and, when Woodland attempted to separate the dogs, the Baileys' dog bit him. *Id.* (Compl. ¶ 30–34). Prior to filing the suit, Woodland and his attorneys sought reimbursement from CSAA under the Policy, relative to a dog (singular) owned by the Baileys. *Id.* (Compl. ¶ 31). Tyler Bailey and Don Bailey also submitted claims for coverage under the Policy in relation to Woodland's claim; they phrased the coverage request as applicable to acts of their dog Roscoe. *Id.* (Compl. ¶ 32). CSAA is currently defending Tyler Bailey and Don Bailey in the Woodland lawsuit, though under a reservation of rights. *Id.* (Compl. ¶ 35). Confusingly, Woodland's state complaint references an attack by multiple dogs.

CSAA contends that there is no coverage for the Woodland lawsuit under the Policy (Count II) and that the entire Policy is void (Count I) due to Tyler Bailey's "material misrepresentation, concealment, or false statement regarding Roscoe" in his Policy application materials. *Id.* (Compl. ¶ 35). Bailey's application for the Policy contains a notice that certain dogs, defined as "vicious

dogs" under the Policy, are not eligible for insurance coverage and that the Policy will not cover any injury caused by such a dog. *See id.* (Compl. ¶¶ 19–21) (also referencing exclusion of "dogs with prior bite history"). The definition of "vicious dog" under the Policy includes any dog belonging to the "Rottweiler" breed which, according to CSAA, includes Roscoe. *Id.* (Compl. ¶ 21). The application for the Policy requires applicants to list all dogs that they own and the breed of said dogs. *Id.* (Compl. ¶ 27). The Policy also provides that the "entire policy is void if it was obtained by fraud or concealment of any material facts or circumstances." *Id.* (Compl. ¶ 23).

CSAA asserts that Tyler Bailey understood that he owned Roscoe under the terms of the Policy and that his failure to disclose his ownership of Roscoe and Roscoe's presence at the Showalter Residence constituted "Concealment or Fraud" that voids the entire Policy. *Id.* (Compl. ¶¶ 26–27 & 44–45). Alternatively, CSAA argues that any claims arising from the dog bite allegedly suffered by Woodland on March 13, 2019 are not covered by the Policy. *Id.* (Compl. ¶ 47). CSAA brings the present action, seeking a declaratory judgment from the Court that the entire Policy is void, or alternatively, that the Policy provides no coverage for any claim involving Roscoe and pursued in Woodland's lawsuit. *Id.* at 12.

Tyler Bailey moves to dismiss CSAA's Complaint on the following grounds: (1) that CSAA's amendment to its original complaint was inappropriate, (2) that the Court lacks subject matter jurisdiction, (3) that the Complaint fails to state a claim on which relief can be granted, and (4) that the Court should, as a discretionary matter, decline to exercise jurisdiction over this declaratory judgment action under the *Grand Trunk* factors. The Court addresses each of these arguments in turn.

## II.      Plaintiff Had the Right to Amend its Complaint

A plaintiff has the right to amend an initial pleading following a Rule 12(b) motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."). Defendant Bailey filed a Motion to Dismiss Plaintiff's original complaint on June 15, 2020. DE 9. Plaintiff filed an Amended Complaint 21 days later, on July 6, 2020, in compliance with Rule 15(a)(1)(B). DE 10. The Court then recognized the Amended Complaint as the operative complaint in this matter. DE 19.

Despite Defendants' assertion that Plaintiff amended its Complaint in bad faith, the Court sees no evidence of "undue delay, bad faith or dilatory motive" on Plaintiff's part, and thus, Plaintiff, even under the discretionary values of Rule 15, "should be afforded the opportunity to amend." *Sharp v. Oakwood United Hosps.*, 458 F. Supp. 2d 463, 468 (E.D. Mich. 2006) (citing *Foman v. Davis*, 83 S.Ct. 227, 230 (1962)). In the matter-of-course amendment context, which sometimes carries adjectives like "absolute" or "unequivocal" with respect to the right,[2] CSAA properly exercised its option to amend the Complaint, and the Court rejects Bailey's argument that such amendment was inappropriate. The Rules expressly envision and allow an amendment that pivots or responds to arguments made in a Rule 12 motion. The matter-of-course process allows the pleader "to consider carefully and promptly the wisdom of amending to meet the arguments in the motion." Fed. R. Civ. P. 15(a)(1) Advisory Committee Notes, 2009 Amendment; *see id.*

---

[2] *See Gaming Mktg. Sols., Inc. v. Cross*, 528 F. Supp. 2d 403, 406 (S.D.N.Y. 2007). The Court does not engage the typical amendment calculus because the Rule gives Plaintiff the right to amend without the Court's blessing.

4

(noting that Rule 15(a)(1) "permits one amendment as a matter of course in response to a responsive pleading" and discussing resulting salutary effects on efficiency, case progress, and advancement of proceedings).

### III. Subject Matter Jurisdiction Exists

Bailey also attacks CSAA's Amended Complaint on the jurisdictional ground that CSAA does not meet the amount in controversy requirement. Here, Plaintiff elected the federal forum on the basis of diversity jurisdiction. Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). When determining whether the amount in controversy threshold has been met, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 58 S. Ct. 586, 590 (1938). To find bad faith on Plaintiff's behalf and dismiss the case on amount in controversy grounds, the Court would have to find "to a legal certainty that the claim is really for less than the jurisdictional amount[.]" *Id; see also Kovacs v. Chesley,* 406 F.3d 393, 396 (6th Cir. 2005) ("The test for whether the jurisdictional amount has been met considers whether the plaintiff can succeed on the merits in only a very superficial way. . . . In the amount in controversy context, 'most courts have found a legal certainty that more than the jurisdictional amount could not be recovered only where the applicable state law barred the type of damages sought by the plaintiff.'") (emphasis removed) (citation omitted); *FirstEnergy Sols. Corp. v. Flerick,* 521 F. App'x 521, 525 (6th Cir. 2013) ("A court must not dismiss an action for failure to meet the amount in controversy requirement unless it appears 'to a legal certainty that the claim is really for less than the jurisdictional amount.'") (quoting *Basicomputer Corp. v. Scott,* 973 F.2d 507, 510 (6th Cir.1992) (quoting *St. Paul Mercury Indem. Co.*, 58 S. Ct. at 289)).

This standard is procedurally distinct from the preponderance standard that a defendant attempting to **remove** a case from state court on the basis of diversity jurisdiction must meet. *See Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 769–70 (6th Cir. 2009) ("The burden is on [the removing party] to show by a preponderance of the evidence that the allegations in the complaint at the time of removal satisfy the amount in controversy requirement."). Here, Plaintiff's allegations, which the law does not foreclose, are ones made in good faith and substantiate the amount in controversy, in two ways.

First, in Count I, Plaintiff argues that the policy itself is void because "Bailey's misrepresentation, concealment, or false statement regarding Roscoe was material to the issuance of the Policy." DE 10 at 10 (Compl. ¶ 44). This argument targets the entirety of the Policy. In declaratory judgment actions, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advert. Comm'n*, 97 S. Ct. 2434, 2443 (1977) (citations omitted). Thus, "the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Lodal, Inc. v. Home Ins. Co. of Illinois*, 156 F.3d 1230 (6th Cir. 1998) (quoting *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir.1975)). In Count I, the object in question is the policy itself. Regarding disability benefits, the 6th Circuit provides that, when the validity of an insurance policy is in question, the value of "future potential benefits may be considered in computing the requisite jurisdictional amount." *Massachusetts Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996) (quotation omitted). The logic underlying that rule is persuades in the context of homeowners insurance. Further, other circuits have held more generally that insurance policy limits determine the amount in controversy when the validity of the entire policy is in dispute. *See Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 784

6

(E.D. Ky. 2008) (first citing *Hartford Ins. Group v. Lou–Con, Inc.*, 293 F.3d 908, 911 (5th Cir. 2002); then citing *Budget Rent–A–Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997); and then citing *Home Ins. Co. of N.Y. v. Trotter*, 130 F.2d 800, 803 (8th Cir. 1942)). Here, "[t]he limits of the Policy are $100,000 for each personal liability occurrence and $417,091 in total across all categories of coverage[.]" DE 10 at 3 (Compl. ¶ 7). Judgment in Plaintiff's favor on Count I would void the entire policy and would have a monetary value far beyond the $75,000 amount in controversy threshold.[3]

Second, in Count II, Plaintiff argues that the Policy does not cover Defendants' claims relating to the incident allegedly injuring Mark Woodland on March 13, 2019. DE 10 at 11–12 (Compl. ¶ 51). Thus, in Count II, the amount in controversy tracks the potential liability should the Court determine that the Woodland case falls within the Policy, as that liability, in part at least, constitutes the "consequences" of the litigation. *Lodal, Inc.*, 156 F.3d at 1230. Bailey argues that this liability does not meet the jurisdictional threshold because, in the state court claim, "Woodland merely pled that he is seeking more than $5,000 to establish Circuit Court jurisdiction, but has alleged no more[,]" DE 13-1 at 9. Bailey also notes that the average cost-per-claim for dog-bite cases is significantly below $75,000. *Id.* at 7–8 ("[The Insurance Information Institute] puts the average cost per claim at $44,759.83."). The mere fact that Woodland's complaint does not state a specific amount of sought damages does not establish to a legal certainty that Plaintiff does not face potential liability of more than $75,000. The Court takes into account the type, nature, and

---

[3] The per occurrence limit matters directly, but if CSAA voids the full policy, other benefits and coverages, including those with respect to unknown claims or issues arising during the policy period, would also evaporate. The full policy is not subject to the underlying claim in this case, but if the case voids the full policy, the Baileys will have lost more than just what is at stake in the Woodland matter.

severity of the claimed harms; Woodland includes allegations of personal physical injury and avers both past and future damages, including "increased risk of harm . . . decreased capacity to labor and earn wages in the future . . . [and] past and future pain and suffering/emotional distress." DE 9-2 ¶ 13. Woodland also seeks punitive damages.[4]

Further, the amount in controversy extends beyond what Woodland may recover in his state court case. As Plaintiff states in its Complaint, Bailey's Policy "requires CSAA to cover the cost of providing a legal defense to insured(s) on covered claims." DE 10 at 3 (Compl. ¶ 8). If the Woodland defense is required by the Policy, Plaintiff would be liable for the costs associated with defending both Tyler and Don Bailey[5] throughout the extensive state court litigation, including "discovery, motion practice, and trial." *Id.* (Compl. ¶ 9); *see Grange Mut. Cas. Co.*, 565 F. Supp. 2d at 784 ("[Defense costs] are included in the amount in controversy (1) when provided by contract, (2) when provided by a statute that expressly mandates or allows the payment of such fees, and (3) when an insurance company will have to pay the underlying defense costs of the insured."). Plaintiff asserts that the price tag of representation, exclusive of interests and costs, will exceed $75,000, independent of any settlement or verdict attributable to Woodland. *Id.* (Compl. ¶ 9). Plaintiff's assertions about the cost of the defense are reasonable and made in good faith; they obviously do not fail to a legal certainty. The legal fees associated with litigation are, though indeterminate, undoubtedly significant, especially if the case continues to trial. Between legal fees and potential damages[6] payable to Woodland, Plaintiff's assertion that the amount in controversy

---

[4] Though a likely exclusion. DE 10-1, at 67.

[5] This does not double the exposure, perhaps, but the fact is that each additional party, even if aligned and co-represented, is something of a multiplier in terms of time, steps, and litigation processes. For instance, each Bailey had a separate answer in the state court case.

[6] The Court notes that the Policy excludes any punitive damages from coverage. DE 10-1 at 67.

exceeds $75,000 is eminently defensible as a jurisdictional foundation. "It is a legal certainty that the plaintiff cannot recover the damages that he or she seeks when the applicable law limits or bars the damages." *Charvat v. NMP, LLC*, 656 F.3d 440, 447 (6th Cir. 2011). Such is not the case here.

Plaintiff further supports its calculations with a proposed Surreply. DE 31-1. In support of its motion for leave to file, Plaintiff asserts that it recently received discovery in the underlying state court case that supports its evaluation of the amount in controversy. DE 31 at 1–2. Plaintiff attaches Woodland's responses to Bailey's interrogatories, in which Woodland asserts that he is seeking $5,949.12 in past medical expenses, up to **$200,000** in pain and suffering, and "future medical expenses," "loss or impairment of future power to earn money," and "property damages," in unknown amounts, to potentially be supplemented at a later date. DE 31-2 at 4–5. In their Response, Defendants take superfluous swipes at Plaintiff's Complaint and conclude that the proposed Surreply "adds nothing of consequence." DE 36. The Court disagrees. The proposed Surreply directly addresses Defendants' argument that the lack of a precise amount of sought damages in Woodland's complaint precludes Plaintiff from establishing a sufficient amount in controversy for federal jurisdiction. The proposed Sureply, which surely depicts the potential scope of the state tort case in a way that bolsters jurisdiction, is well taken, and the Court accepts it into the record. Ultimately, the Court finds that Plaintiff's jurisdictional averment is one made in good faith; it provides sufficient support for an amount in controversy in excess of $75,000. Under the applicable standards, the Court could not say, to a legal certainty, that the consequences of this action do not exceed the threshold, and thus, the Court eschews dismissal.

## IV.     Plaintiff's Amended Complaint Presents Facially Plausible Allegations

Defendants also assert that Plaintiff's Complaint fails to state a claim upon which relief can be granted, arguing that the facts alleged by Plaintiff do not present a basis for voiding the Policy under Count I. DE 13-1 at 10–12.

A complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). A complaint, with all factual allegations taken as true, that presents "enough facts to state a claim to relief that is plausible on its face[,]" survives a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). The theory here requires little lifting.

In its Complaint, Plaintiff asserts that, at the time he submitted his application[7] for the Policy, Tyler Bailey was an owner of a "vicious dog," knew he was such an owner, and failed to disclose his ownership of the dog. CSAA claims the false statement or misrepresentation voids the Policy by its terms and under Kentucky law. DE 10 at 10–11 (Compl. ¶¶ 40–45). Plaintiff specifically alleges that the non- or false disclosure was material and that the company would not have issued the Policy, or would have handled it differently, on full disclosure. The signed application contains language arguably conveying just this idea. These allegations, though subject to proof and testing, are sufficient under Rule 12. The assertions are factual and support a plausible

---

[7] To be clear, the signed application is in the record at DE 10-3.

theory for relief. Taking Plaintiff's factual allegations as true, Bailey's acts may invalidate the

Policy. Plaintiff's Complaint clears the Rule 12(b)(6) hurdle.

## V.     The *Grand Trunk* Factors Favor the Court's Maintenance of this Action

Finally, Defendants argue that the Court should decline to exercise jurisdiction over this

declaratory judgment action, under the discretionary principles of the Declaratory Judgment Act,

28 U.S.C. § 2201, considering the factors outlined in *Grand Trunk W. R. Co. v. Consol. Rail Corp.*,

746 F.2d 323 (6th Cir. 1984).

The Court quotes at length from Judge Stranch's outline of the *Grand Trunk* analysis:

> The factors, often called the *Grand Trunk* factors after the case that brought the list into being in this circuit, are:
> (1) Whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking]
> a. whether the underlying factual issues are important to an informed resolution of the case;
> b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and
> (5) whether there is an alternative remedy which is better or more effective.

*W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (quoting *Scottsdale Ins. Co. v.*

*Flowers*, 513 F.3d 546 at 554, 560 (quoting *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746

F.2d 323, 326 (6th Cir. 1984)) as to primary factors and quoting *Bituminous Cas. Corp. v. J & L*

*Lumber Co., Inc.*, 373 F.3d 807, 814–15 (6th Cir.2004) as to subfactors).

The ultimate analysis focuses on the utility of the declaratory judgment remedy and the fitness of the case for federal resolution, matters "peculiarly within the[] grasp" of district courts. *Wilton v. Seven Falls Co.*, 115 S. Ct. 2137, 2144 (1995). The *Grand Trunk* factors capture "underlying considerations of efficiency, fairness, and federalism" and the factorial grading and weighing "depend on the facts of the case." *Hoey*, 773 F.3d at 759. The Court notes that, in diversity coverage cases where state law provides the decisional rule, state interests (forum law, insurance regulation, issue familiarity) will normally emerge for reckoning in at least part of the analysis. No difference here.

Regarding Factor 1, Defendants argue that this declaratory action would not settle the controversy between the parties because it would not address non-party Woodland's underlying claim. DE 13-1 at 14–15. However, the validity of Woodland's claim for damages is not a factor in the settling of the Policy controversy, in essence a contract dispute, between Plaintiff and Defendants. The Court need not "inquire into matters being developed through state court discovery." *Scottsdale Ins. Co.*, 513 F.3d at 556. This declaratory action will settle the full controversy regarding the insurance coverage of the Baileys and Roscoe by answering two questions: (1) whether the Policy is void, and (2) whether CSAA must cover Woodland's claim against the Baileys. This circumstance is comparable to that in *Scottsdale Ins. Co.*, where the 6th Circuit determined that the district court's declaratory judgment did settle the controversy between the parties where the issue addressed was the scope of an insurance policy and the insurance company was not a party to the underlying state court case. *Id.* Thus, Factor 1 weighs in favor of jurisdiction.  *See also United Specialty Ins. Co. v. Cole's Place, Inc*., 936 F.3d 386, 397 (6th Cir. 2019) ("This court's most recent decisions have held that district courts did not abuse their

12

discretion in concluding that a declaratory judgment would settle the controversy by resolving the issue of indemnity.").

As to Factor 2, Defendants argue that this action is of limited usefulness because Woodland is not a party to this action. DE 13-1 at 15–18. However, Woodland, with no extant claim against CSAA, is not a necessary party. Here, a declaratory judgment will be useful in that, irrespective of tort concepts, it will define and clarify the legal relationship between CSAA and the Baileys. *See Scottsdale Ins. Co.*, 513 F.3d at 557 ("While the parties may have other tortious or contractual relationships to clarify in state court, our concern in considering the second *Grand Trunk* factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer."). As stated in *United Specialty Ins.*, "the absence of a state-court party carries most weight when issues relevant to the coverage controversy are actually and concurrently being litigated in state court." 936 F.3d at 398; *id.* (noting the adequacy of "the one live controversy over coverage [that] will be settled by a declaratory judgment"). That is just the situation here, where the state litigates the tort and the federal court confronts distinct insurance questions about coverage. Thus, Factor 2 also points toward federal jurisdiction.

Defendants assert that Factor 3 weighs in favor of dismissal, creatively arguing that Plaintiff is manipulating the litigation process to gain an "advisory opinion" from the Court that Plaintiff can then use to pressure Woodland into settling his claim, rather than simply choosing its preferred forum to adjudicate the relationship between the parties. DE 13-1 at 18–19. This argument, doubtfully the Baileys' to make, both lacks supporting evidence and misses the key goal of Factor 3. "The third factor is meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem

13

to have done so for the purpose of acquiring a favorable forum." *Scottsdale Ins. Co.*, 513 F.3d at 558 (internal quotations omitted). Here, Plaintiff filed its original complaint on April 17, 2020, two months **after** Woodland filed suit in state court. DE 1. Thus, there is no concern about "a race for *res judicata.*" *Id.* Further, "when the plaintiff has filed his claim after the state court litigation has begun, we have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.'" *Id.* (quoting *Bituminous Cas. Corp.*, 373 F.3d at 814); *United Specialty Ins.*, 936 F.3d at 399 ("[W]e generally do not make a finding of procedural fencing if the declaratory-judgment plaintiff filed *after* the commencement of litigation in state court."). As there is no evidence of "procedural fencing" or improper motive in Plaintiff's selection of forum, Factor 3 supports federal jurisdiction.

As to Factor 4 (with sub-factors gauging federal-state friction and encroachment), the Court sees little risk here. There are few, if any, factual issues developing in the Scott County Circuit Court that are important to informed resolution of the federal matter. The Woodland lawsuit will develop the facts relating to the incident on March 13, 2019, while this action will focus on the terms of the Policy, the relationship between the insurer and the insured, circumstances of Policy issuance, and the facts surrounding Roscoe's ownership and lineage. The Court sees no real overlap here.[8] Additionally, the coverage issues, once concrete, are likely legal, not factual. *Scottsdale Ins.*, 513 F.3d at 560–61 (noting that insurance coverage questions are often answerable

---

[8] Two matters bear mention:  Woodland does allege that the involved dog has a relevant history. DE 9-2 ¶ 8. That *could* overlap partly with the federal case, given the subsidiary questions tied to Policy exclusions and issuance. Other than that, the ownership matter seems an unlikely field of debate, given the state court answers by the Baileys (conceding ownership) and the allegation, in the Complaint, that only one Bailey dog actually was involved. The lone (and second-tier) issue does not raise sufficient comity or conflict worries to discourage federal retention of the case.

"as a matter of law and do not require factual findings by a state court"). Of course, the state certainly has a primary interest and expertise in insurance and its regulation. *See United Specialty Ins.*, 936 F.3d at 401. The Court acknowledges that this factor nearly always lands on the deferral side of the ledger. Here, however, the case involves policy construction under non-novel Kentucky evaluative principles. "Relevant Kentucky law is clear, and a federal court can confidently apply it without fear of creating conflicts with the Kentucky courts or intruding on their jurisdiction." *Id.* at 400; *see also Scottsdale Ins.,* 513 F.3d at 561 ("[N]ot all issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them."). The keys in the federal case are not the same, factually, as the matters to be tried in Scott County Circuit Court; notably, Kentucky law has a strict liability scheme for dog-related harms, KRS § 258.235(4), which will pare the state issues considerably.[9]  Most Factor 4 considerations counsel the Court to maintain the case.

Finally, Factor 5 requires the Court to consider whether an alternative remedy would be better or more effective. Here, the alternative remedy would be for Plaintiff to seek a declaratory judgment in state court. *Scottsdale Ins.,* 513 F.3d at 562. While Plaintiff could have brought this action in state court, "it cannot be said that the district court [i]s a clearly inferior forum to resolve the issue." *Id.* Kentucky can always better apply its own law, but the contract, Policy, and statutory issues here are not ones peculiarly within the ken of the Commonwealth's courts. Thus, Factor 5 perhaps suggests but does not compel that the Court to dismiss case.

---

[9] "Owner," per the statute, has a particular meaning. KRS § 258.095(5). This leads the Court to reject the mootness argument Defendants link to a state finding of Justin as Roscoe's "owner."

15

The Court has carefully assessed the values of fairness, efficiency, and federalism. Plaintiff simply and properly elected to bring this action in a federal forum. On balance, the *Grand Trunk* factors point significantly toward federal retention of the case, which fairly resides on the federal docket. This Court can efficiently resolve the full coverage dispute while avoiding entanglement or conflict with the pending state proceeding, thus preserving undiluted respect for the state interests concerned.

Accordingly, the Court **ORDERS** as follows:

1. The Court **GRANTS** DE 31 and **ACCEPTS** Plaintiff's Surreply as properly filed;

2. The Court **DENIES** DE 13; and

3. The Scheduling Order entered by Judge Stinnett (DE 21) remains in effect, as modified by the Order staying discovery as to Count I (DE 33).[10]

This the 2nd day of February, 2021.

Signed By:

_Robert E. Wier_

**United States District Judge**

---

[10] The Court accepts that the stay is in effect, although it has little appetite for piecemeal dispositive motions in a declaratory action.